Good morning, Your Honor. As you announced, I'm Sheila Myers with the Tulane Law School Criminal Justice Clinic, appearing on behalf of appellate Quanta Reeder. Your Honor, this is an appeal about a non-disclosed federal conviction for lying and the state's key witness lying about having that conviction for lying. When the court granted a certificate of appealability in this case, it did so specifically to address the question of whether the withheld impeachment evidence was material under Brady v. Maryland. The short answer to that question is yes, because of the combined nature of the evidence presented in Mr. Reeder's trial and the particular unique nature of the conviction in question. As we know, materiality in a finding of it is dependent upon the specific circumstances in the case and a determination that there was a reasonable probability had the withheld evidence been presented, it would have had a reasonable possibility of altering the outcome. We know from Kiles v. Whitley, which is another case involving withheld evidence by the Orleans Parish District Attorney's Office, that that materiality standard does not require a defendant to prove beyond a preponderance that he would have been acquitted had the evidence been presented. We also know from Bagley that he is not required to show that there would have been a different verdict. All that is necessary is for the defendant to show that the withheld evidence undermines confidence in the verdict of the jury. In Reary v. Cain, the United States Supreme Court, I would say elaborated on this and said, where the evidence in a case is already thin, any evidence that undermines the verdict is material. In light of all of this standard, we know that materiality then is a case-specific finding. Regarding impeachment evidence, we know from Bagley that the value and significance of impeachment evidence becomes greater and greater the more the case is based and dependent upon the testimony of one witness. In Smith v. Cain, another case involving withheld evidence by the Orleans Parish District Attorney's Office, the testimony against the defendant rested entirely on one witness. And when evidence was withheld that served to impeach that witness, United States Supreme Court found that that was material. Mr. Myers, it seems to me that you're exactly correct that it is case-specific. The two cases, it seems to me, you've just talked about Reary and Smith. At least one way to look at them is they're much more serious with withholding of information and Reary, strong motives to lie by two of the witnesses, significant problem on the third piece of evidence. On Smith, the only witness was the one for which the withheld material applied to. It seems to me here we're dealing with, you know the facts far better than I do, a 17-year-old conviction. Even though it was a conviction for a falsehood, it is still a quite old conviction. There was some prior conviction evidence put in front of the jury, one piece, and there was other available to the defense. So on the continuum, that's what it is, is on this range of evidence that we have to consider, some of which is enough, some of which is not. Why does this, what's your best, I don't wanna say best case because I think you've already given them. What's the best reason for us to look upon this absent evidence as being significantly effective on the result? Well, Your Honor, I would say two reasons. One, because of what was the evidence presented in the case. And two, because of the unique nature of this case. If I might, I will move to addressing the evidence that was presented in the case. And that was the state's entire case rested almost totally on the testimony of Mr. Price. There was a jacket recovered, but note that jacket was never linked to the defendant. And there was some hearsay evidence, but obviously we know under Jackson v. Virginia, that would not have been sufficient to convict Mr. Reeder. There was no gun. Remind me on the jacket, I'm sorry to interrupt. Was it found in the dumpster as Price had said, even though it wasn't the same color? Yes, Your Honor, it was not the same color. It was found by the dumpster as Mr. Price had said that the perpetrator threw a jacket by the dumpster. That jacket was never in any way linked to Mr. Reeder. There was no gun ever recovered in the case. There was no firearms identification. There was no other scientific evidence in the case, such as fingerprints or DNA. There was no motive ever introduced on behalf of Mr. Reeder. There was no evidence of prior blood, bad blood between Mr. Reeder and the deceased. There were no post-crime inculpatory statements by Mr. Reeder. And in addition, there were two other things that were really significant, I believe, and that is one, there was evidence of another suspect. That suspect had a motive to lie, had made a threat, and shortly after the shooting, called to tell people about the shooting. In addition, Mr. Reeder presented an alibi that he was playing basketball with other gentlemen on the basketball court in the housing development. That evidence, Judge Southwick, and I think you can see the significance more and more of the evidence about the lie when you consider what the state did with that alibi evidence. In its closing argument, it discredited that alibi evidence by saying, one, they were friends of Mr. Reeder, two, the people had convictions for drug offenses. And then they argued, and this is a quote, you will find that Earl Price, with everything you know about him, was a credible witness.  he admitted them right away. Not a hesitation, not a lie. He admitted them right away. That was a completely false statement, completely false, because when asked on the stand whether he had any other convictions, nevermind the convictions that the defense might've known about and didn't use, he denied anything else. He never admitted that he had a prior conviction for lying. So he lied about his conviction for lying. When you're asking the jurors to convict someone on his word and you highlight how truthful you believe he is and how you've shown by your questions his truthfulness, the mere fact that you have withheld that conviction becomes very significant. In addition, there is something unique about this in that the conviction is a unique one. We're not talking about a conviction for an assault, a battery, a robbery. We're talking about a conviction that falls into the classic cases known as crim and falsi. Those are cases where because of dishonesty, the crime has the ability to affect the administration of justice by the introduction of fraud or deceit. That's what this was. And this court in State v. Cathay said itself in talking about it, that these are crimes involving dishonesty and are often more probative of a witness's lack of credibility than even more serious crimes of violence. That is why this evidence about Mr. Price was so important in the context of what was the evidence in the entire case, what was the argument made about his truthfulness by the state and the nature of this plot. The jury was- Let me ask you, on the firearm conviction, false statement and applying for a firearm, what was developed in this record about that? What did he do that was a false statement in that application? Well, what we know, Your Honor, about it comes from the actual document that forms a part of the record. And the document states that he knowingly made a false statement with the specific intention of obtaining a firearm from a seller when he would not have legally been entitled to it and that he then possessed that firearm. So there were really two- That's all we know. That's all I picked up from what I read. That's all we know about that conviction. Yes, Your Honor, just from what was actually the document, we do know that he pled guilty to that conviction, that he was placed on probation, and that four years into his five years probation, he was revoked and sent to the federal penitentiary. And obviously, for purposes of 609 issue, which wouldn't be specifically relevant in Louisiana law, but would be in federal law, the 10-year period wouldn't start to run until he completed his sentence. So this crime might actually fit. We don't know for sure, but depending how much time he spent in prison, it might actually fit within the 10 years. Otherwise, the way to address it would have been, since in Louisiana, there is no time limit on convictions, the proper way to address it would have been reveal it to the defense and then file a motion in limine arguing it's remote. You don't withhold it and then later say, oh, well, it doesn't make any difference, that that is not what Brady versus Maryland intended. This jury was asked to make a determination of guilt or innocence based on the testimony of Mr. Price, without knowing one, he had that conviction, and more significantly, without knowing that after getting on the witness stand and raising his hand and swearing to tell the truth, the whole truth and nothing but the truth, he lied about having that conviction. Significantly, Your Honor, in looking at this entire picture, we know that given the evidence that was presented, the first jury that heard this case deadlocked. We don't know what the verdict was in the second jury in 1995. We do know that at that time, a verdict did not have to be unanimous. So we don't know whether 10 people, 11 people, or 12 people found Mr. Price to be credible at that trial. But those are significant facts to consider in light of the fact that nobody was advised that he had this conviction. There are, I guess, Your Honor, since this is an appeal of a state post-conviction decision, and the highest court that reached a decision was the Fourth Circuit Court of Appeals, the standard that would apply here is under 28-22-54-D1 or D2. And we do know that the Fourth Circuit made an erroneous finding of fact in reaching the decision that it reached in this case. It said specifically that prior to the first trial, evidence of a federal conviction for being a convicted felon in possession of a firearm had been revealed, and suggesting that though maybe the other federal conviction wasn't revealed, the defense knew about that conviction. That is not correct. That is not substantiated by the record. In fact, the record shows to the contrary that when the state filed a handwritten answer to the defendant's request for discovery of convictions, after first saying not entitled, when it filed the answer, it was handwritten, and it listed on it three state convictions for Mississippi, an assault, a burglary, and an armed robbery, and a state conviction from Alabama, a convicted felon in possession of a firearm. Nowhere on that document, which is contained in the trial record, and which was supplied by both the defense and the state to the Fourth Circuit in their respective pleadings, nowhere in there is there any evidence that the federal conviction for being a convicted felon in possession of a firearm was ever produced. That is an erroneous finding by the Fourth Circuit. In addition, we know that given the nature of the evidence in this case, that what was presented at trial, and given the unique nature of the conviction that we're talking about, in a case that rested primarily on the testimony of Mr. Price, the Fourth Circuit erroneously applied, clearly established jurisprudence as set forth in Supreme Court decisions on the issue of materiality. Accordingly, Your Honor, we would say that the petition for habeas corpus filed on behalf of Mr. Reader should be granted, and his conviction for second degree murder reversed. Thank you, Your Honors. I believe I have reserved three and a half minutes for rebuttal, thank you. All right, thank you, Ms. Meyers. You have four minutes you've reserved for rebuttal. Mr. McPhee, we'll hear from you. Yes, thank you, Your Honor, and may it please the court. In 1996, Congress was concerned about the flood of state habeas petitions that were clogging up the federal court system, and so it passed AEDPA, and it amended Section 2254D, and instated what has become known as a relitigation bar. And under the relitigation bar, if an issue has been litigated on the merits in the state court, the federal court is without power to reverse the state court's decision on that issue, unless it fits into one of two very narrow exceptions. And Section 2254D1 says that the decision must be contrary to, or an unreasonable application of federal law. Now, I think the first issue here, and if I may clear up a little bit of confusion about what counts as clearly established federal law, the Supreme Court has said that it is only it's the holdings of its own cases at the time that the state court rendered its decision on the merits. Now, that would have been in May of 2012, I believe. Weary v. Cain, which Mr. Reeder relies on quite heavily, of course, was decided after May of 2012. So Weary v. Cain does not count as clearly established federal law for the purposes of this panel's review of that decision. That also goes for any of this court's decisions. I notice Mr. Reeder cites decisions from the Ninth Circuit, from this circuit, the Seventh Circuit, even Virginia Woolf. But none of those count as clearly established federal law. Well, counsel, leaving Virginia Woolf aside, it seems to me that any decision by a circuit court, particularly this court, that says this is what clearly established Supreme Court law was, worth considering. And if it's by this court, it would be precedent-binding for us. Is that a fair statement? No, Your Honor. Respectfully, I would disagree, and I would say that the Supreme Court has held that only its holdings, and not even its dicta. Well, counsel, what if we today said what clearly established law was relevant to this, from the Supreme Court? Next week, another panel would have to ignore that, even though we just said that clearly established Supreme Court law is X? Your Honor, I think that you have put your finger on a strange problem with that. Your Honor, what's particularly strange, we each interpret what the law is. We don't need a philosophical discussion. We'll have to deal with this, but I do think you're absolutely right. It's Supreme Court authority to look at, but when we look, we'll say what we see, and that has effect. Yes, Your Honor, and I think what matters is this might actually be a philosophical conversation, because the cases are going to be very different, and the next step in determining what's clearly established law, as this court explained in Bonk and Langley v. Prince just last year, is you have to look at the correct level of generality, and this court expressly cited the Supreme Court's qualified immunity jurisprudence. Now, to count as clearly established federal law under qualified immunity, of course, the facts have to be almost identical, not quite identical, but very similar, and here, it's not enough to simply cite the Bagley standard or the Brady standard. Instead, it's the state's view that the court has to sort of zoom in, and here, Mr. Reeder says that this old conviction, well, it counts and puts the case in a whole new light, but that is only character evidence, and in my reading of the relevant Supreme Court decisions at the time that had been decided at the time, I don't see a case where the court says that mere character evidence can put an entire case in a whole new light, and I think that that is dispositive, so even if this court had on direct review somewhere else said, we think that character evidence makes a big difference, that wouldn't matter for the purposes of AEDPA because only the Supreme Court's holdings count, not this court's holdings, and that's simply what I mean when I say that this court's jurisprudence could be much more fully developed because this court simply hears more cases, but the state court is only obligated to know and understand the holdings of the Supreme Court, and not this court or any other circuit at the time that it rendered its decision, and so it really would be, in my view, Your Honor, only the Supreme Court cases that would matter. Now, in case there is some question, I could imagine either opposing counsel or the court wondering whether or not we have waived or forfeited the clearly established law standard because, of course, Mr. Reeder supplemented the record below in the district court with the weary decision, but once again, relying on Lang-Levy-Prince decided on Bonk last year, this court expressly held that a state court lawyer cannot waive the section 2254D standard, and so diving in a little bit deeper into the relevant cases, now that we kind of have a good idea of what counts as clearly established federal law, the question here is just whether it's material, whether or not this undisclosed conviction was material, and I'd like to, sorry, going back just a little bit, federal rule of evidence 609 is also not clearly established federal law for the purposes of this court's review of the state court's decision, and the state court simply says, or excuse me, state law simply allows any prior conviction. It doesn't have any sort of special exceptions for character evidence of regarding dishonesty, but looking at the relevant Supreme Court decisions decided at the time when the Fourth Circuit was looking at this, it seems like they're all very distinguishable to me, Your Honors. For example, in Smith v. Cain, the key witness said he couldn't identify anyone because he couldn't see faces, and he wouldn't have known them if he'd seen them. That is, of course, powerful evidence that goes to the question at issue in the case, whether or not he was innocent, whether or not he could have made a correct ID. That is dramatically different, Your Honors, from the case here where the only thing that's at issue is whether or not he had a conviction for lying that was 17 years old and that was made in the past. So I think that Smith v. Cain is clearly distinguishable. Kyles v. Whitley, I almost feel a little inadequate talking to the panel about that case because, of course, Judge King was on the panel at that time, and it was her powerful dissent that was quoted directly by the Supreme Court in that case in which she said, for the first time in my 14 years on this court, I have serious reservations about whether the state has sentenced to death the right man. And the Supreme Court, of course, relied on that, and the evidence there was, again, of a powerful, dramatic nature. There were conflicting testimonies between the eyewitnesses. It was just a totally different case, dramatically different case that really didn't at all put into question mere character evidence. The same goes for Bagley and Augers and Brady v. Maryland. And so, Your Honors, I just don't see a case that's on point here. And I believe that that becomes especially salient when we actually consider what was known at the trial. This isn't simply a case where the state's case rested entirely on Mr. Reeder. For example, Detective Morris testified that Norma Varest had identified Reeder as the shooter, and Mary Menina had provided similar testimony. And both testified that Ms. Varest was afraid to speak publicly on the issue. Now, whether or not those statements are hearsay, I know the court has heard a lot about hearsay this morning, but whether or not those statements are hearsay, they were admitted into evidence and the jury did hear them. And so, it wasn't simply just Mr. Reeder's account, or excuse me, Mr. Price's account. Oh, my apologies. And so, I think it matters also a great deal that here, the basic facts of Mr. Price's account of the shooting are pretty well corroborated by the evidence. He said that he saw Mr. Reeder have an argument with Mr. Broxton, the victim, and he said that he saw him shoot him twice, and then Mr. Broxton turned and started running to the store and Mr. Reeder shot Mr. Broxton two more times and missed two times, and his bullets hit the car nearby before Mr. Reeder, excuse me, Mr. Broxton ran into the grocery store. And that basic account, of course, and then later he said he saw Mr. Reeder deposit his jacket by the dumpster and he led the authorities to the jacket, and that jacket was seen by other witnesses such as Ella Fletcher, I believe. And so, it seems like the actual account here was pretty well corroborated by the evidence and that there was good reason to believe him. Mr. Price testified, I never forget a face and I saw him, and there's very good reason to think that he actually did see Mr. Reeder on that day and the jury believed him. If that were not enough, your honors, the defense counsel had every opportunity to impeach Mr. Price on his testimony. The defense counsel knew very well that Mr. Price had more than just the one conviction for aggravated battery and with intent to kill. And he asked Mr. Reeder on the stand, or excuse me, he asked Mr. Price on the stand, do you have any other convictions? And Mr. Price lied on the stand and said, no, and defense counsel didn't correct him, didn't try to impeach him, said nothing and just let it go. So, I'm actually not sure that even if he had known, even if the defense had known about this extra conviction for lying that was 17 years old at the time, it's not clear that he would have used it. And so the state court, the Fourth Circuit decision, which is what this court is reviewing here, they said, no, it didn't, that extra conviction would not have undermined the jury's verdict. And of course, that decision is not on review here merely for incorrectness. This panel perhaps on direct review might have seen things differently. Instead, the court is reviewing for unreasonableness beyond any fair-minded debate. In other words, this court would have to say that every fair-minded jurist who could read this Fourth Circuit opinion would come to the opposite conclusion. There is no room even for reasonable debate. But I want to add that every judge who has considered this issue so far has found that the withholding of the information was not material, including the district court, who I would say is most certainly a reasonable jurist. And so in my view, Your Honors, it would appear that the standard is clearly satisfied here and that Mr. Reeder cannot overcome EDPA's very, very demanding and difficult review. And I think that that standard makes all the difference here. Mr. McPhee, in reviewing what the highest state habeas court did on this, are you saying we are looking only at whether there's an unreasonable determination of the facts? Is there any legal conclusion in that opinion that we also should be looking at? Yes, thank you, Your Honor. So this court has said that Brady violations implicate mixed questions of law and fact. And it has also said that mixed questions of law and fact must satisfy section 2254 D1, which is the contrary to an unreasonable application of. So I think that there is both questions of facts and questions of law that are mixed in here. Let me ask you about the fact determination. What is the relevant fact determination in that decision? I believe that the relevant fact information was- Relevant fact finding in that determination, in that decision. Yes, Your Honor. I would say that it is that the information was withheld by the state. And my guess is that favorability and materiality are questions of law, but whether or not that information was withheld is of course a question of fact. And the state concedes that that information was withheld and the state concedes that that information was favorable. So- Whether this form of conviction, if known and used would have affected the outcome, which is something the court says it would not have, you're saying that should be reviewed on whether it's an unreasonable application? Yes, Your Honor. That's exactly correct. So, and it would have to be unreasonable beyond any fair-minded debate. And so- I have all that standard. This will make sure where you're putting different parts of the opinion. Thank you. Yes, Your Honor. So, I think just to sum up, I don't see any relevant Supreme Court case law that directly addresses the issue of whether or not character evidence alone can put a case in a whole new light. And I also don't see any Supreme Court decision that directly addresses the issues here, especially when there's so much other corroborating evidence. And I agree with opposing counsel's statement that under the Bagley standard, if you have extra evidence, then whether or not one witness statement matters, it begins to lessen. And here there is other corroborating evidence. So, I don't see this as falling under any of the Supreme Court's holdings that had been decided at the time. If there are no further- I notice your name is not on the brief. I no doubt you filed a appearance. I'm not suggesting that. Who are you with, the DA's office, Attorney General's office? Yes, Your Honor. I am with the Louisiana Department of Justice, the Attorney General's office. But did not participate in the writing of the brief, apparently. At least your name's not on it. That's correct. No, I did not participate in the writing of the brief, Your Honor. I sort of parachuted in about a month ago. The person who did write the brief, I've been told, has left the office. But our office likes to get involved occasionally with complicated, especially complicated ad book cases. And for example, we did exactly that in Langley v. Prince, which this court decided on bunk last year. The State Solicitor General's office likes to help out in these sort of cases, which I think there's some correlation in the federal system as well. Thank you. But if there are no further questions, I'm happy to yield the remainder of my time to the panel. Thank you. All right, thank you, Mr. McPhee. Ms. Myers, we're back to you for rebuttal. Thank you, Your Honor. First, Your Honor, I would like to address the fact that the evidence in question here is not character. This is not evidence as to a reputation that Mr. Price had for truthfulness or non-truthfulness. This is evidence that he was previously convicted of lying, and he lied on the witness stand about that conviction for lying. So we're not talking about character evidence. In addition, Your Honor, contrary to what counsel for the government has said here, in Williams v. Taylor, the United States Supreme Court said that the appellate courts reviewing this, the federal district courts on the appeals benches reviewing these cases are to consider all of the facts and apply the law as it exists to those facts, because what they wanted to avoid was a circuit court for one area coming up with one decision, a circuit court for another area coming up with another decision. So to suggest that you have to have a case that is exactly on point before a defendant can meet the materiality standard or show that there was an unreasonable application of Brady v. Maryland is incorrect, because under that theory, everything that is new and coming up for the first time would never stand a chance of having a Brady violation corrected. Your Honor, also, what I think is important here is in 1984, in its decision in California v. Trombetta, the United States Supreme Court reviewed that it had long determined that in deciding whether or not a prosecutor had complied with obligations for due process, it was important to consider whether or not a defendant had a meaningful opportunity to present a complete defense. Mr. Reeder did not have a meaningful opportunity to present his defense that Mr. Price was a liar because of the withheld evidence. This court has said that in Floyd v. Vinoy, another case involving withheld evidence by the district attorney's office in Orleans, that it was important to look at what the defense, how it could have used the withheld evidence. And contrary to what counsel for the government has said, the defense could have dramatically used the evidence in question. After pointing out that, number one, there was an alibi, after pointing out, two, there was a alternate suspect, the defense could have then said to the jury, in addition to inconsistencies in Mr. Reeder's testimonies about how the perpetrator arrived, in addition to being contradicted in the version he gave of what happened after the shooting by the store clerk and the state's own pathologist, who said it would be practically medically impossible for what he said to have occurred, the defense could have then focused on, and what do you know about this man, ladies and gentlemen? This man is a liar. He's been convicted of lying when it served his purpose, and he lied on that witness stand about that prior conviction. That is a dramatic use that any defense counsel would certainly have made. In United States v. Augers, this court has said that there may be enough evidence in some cases, but in this case, there clearly wasn't enough evidence given the lie that was told in looking at the whole case. Accordingly, your Honor, we believe that it is appropriate for Mr. Reeder's application for post-conviction to be granted and his conviction reversed. Thank you. All right, thank you, Ms. Myers. Thank you, Ms. McPhee, for your briefing and argument on the case. That concludes the argument in this one. The case will be submitted, and we will get it decided as soon as we can. Thank you both for your excuse. Thank you, Your Honor.